IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DERRICK JORDAN, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. 3:04-cv-775-WDS |
| STEVE KEIM, | ) |
|     Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter has been referred to Magistrate Judge Donald G. Wilkerson by Senior United States District Judge William D. Stiehl pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for Summary Judgment filed by the defendant, Stephen Keim, on October 18, 2005 (Doc. 13). For the reasons set forth below, it is **RECOMMENDED** that the motion be **GRANTED** and that the Court adopt the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

The plaintiff, an inmate in the Menard Correctional Center, is a Hebrew Israelite. As part of his religious observance, the plaintiff participates in the Feast of the Unleavened Bread, a seven day period of time after Passover wherein only unleavened food may be consumed. The plaintiff alleges that in 2001, 2002, and 2003, the defendant, a Chaplain at Menard, prevented him from participating in this religious ritual because of discriminatory animus against people of the Hebrew Israelite faith. There is no dispute that the plaintiff participated in the Feast in 2004 and 2005.

In order to request a dietary modification because of one's religion, an inmate must make a request consistent with the Illinois Administrative Code:

> A committed person requesting a dietary modification required by a specific religious holiday or ceremony must submit a written request to the facility chaplain 45 calendar days before the holiday or ceremony. The request must contain verification that the committed person is a member of a faith group requiring the dietary modification and the specific requirements of the dietary modification. Eligibility to receive an alternative diet for a specific religious holiday or ceremony shall be determined by the facility chaplain who shall ordinarily confer with a religious leader or faith representative of the faith group at issue. The facility chaplain and religious leader or faith representative may interview the committed person.
>
> 20 Ill. Admin. Code § 425.70(d).

In his declaration, the plaintiff states that he requested participation in the Feast on February 1, 2001, in accordance with department regulations, for the Feast that would begin on April 13, 2001 (Derrick Jordan Declaration, Doc. 22, ¶¶4, 6). However, Judge Stiehl, in the August 3, 2005 screening Order, already has found that the plaintiff failed to comply with the regulation in this 2001 request by failing to identify the specific dietary modification that he requested (Doc. 9, 4-5). In addition attached to the plaintiff's complaint is his request for a dietary modification, which states: "In accordance with D.R. 425.70(d) I am requesting to be placed on the list to participate in the Feast of Unleaven Bread. I am a Hebrew Israelite." There is no verification in this request and no indication of the specific dietary modification requested, just a statement of the plaintiff's religion and the event he wants to participate in. In his affidavit, the defendant states that the plaintiff was denied participation because he failed to specify what dietary modification he requested (Stephen Keim Aff. ¶4).

The plaintiff further declares that he submitted a request on February 11, 2002 for the Feast that would begin on March 28, 2002 (Jordan Dec. ¶13). The defendant states that this request was one day late and therefore denied (Keim Aff. ¶5). In response, the plaintiff indicates

that "[t]he defendant misconstrued the plaintiff's request, Passover began on March 27, 2002, this wasn't what the plaintiff was requesting to observe. The Feast of Unleavened Bread started on March 28, 2002 . . . " (Jordan Dec. ¶12). Thus, there appears to be a factual dispute as to the day of the Feast, March 27th or March 28th.

Finally, the plaintiff declares that he submitted a request on January 29, 2003 for the Feast to begin on April 16, 2003 (Jordan Dec. ¶15, 21).[1] Again, the defendant states that the request was denied because it failed to comport with the regulation (Keim Aff. ¶6). Specifically, the request, which also is attached to the complaint, fails to indicate a faith group, a verification, and the specific dietary modification (Keim Aff. ¶6). When the plaintiff spoke to the defendant about the April, 2003 feast, he was informed that the prison does not recognize Hebrew Israelites and that the plaintiff must designate himself as an African Hebrew Israelite and receive Vegan meals year round in order to participate in the Feast (Jordan Dec. ¶ 30-34). The plaintiff states that there is a difference between Hebrew Israelites and African Hebrew Israelites and that the tenets of the religions are not identical (Jordan Dec. ¶32).

Both parties appear to agree that other persons at the jail were allowed to participate in the Feast, including African Hebrew Israelites and Jews. The plaintiff, however, declares that no Hebrew Israelite was allowed to participate in the Feast in 2001 (Jordan Dec. ¶42).[2] He also states that "throughout the plaintiffs incarceration at Menard numerous Hebrew Israelites have

---

[1] The plaintiff does not specifically indicate when the Feast began in 2003; however other documents appear to indicate that the date is April 16, 2003.

[2] There is no evidence that the plaintiff knows *all* of the Hebrew Israelites at Menard and there is no evidence from any such persons would attest to the fact that they were denied participation in the Feast in 2001.

3

been discriminated against by the defendant [sic] . . . ." (Jordan Dec. ¶43). There is no relevant indication in the record as to the basis of these statements.

Attached to the plaintiff's declaration, however, are affidavits from other inmates. Inmate Jerry Boston, whose specific religious affiliation is not immediately apparent from the filings, states that he has been denied participation in religious feasts and ceremonies from 2001 to 2003. Inmate Freddie Bonner, an African Hebrew Israelite, states that he was denied "leaven free trays during the Feast of the Unleavened Bread" in 2001. Inmate Courtney Hubbard, a follower of Bnai Noach, states that he received leaven free trays for the Feast, not because he requested them pursuant to the above code, but rather because "Rabbi Scheichmen makes sure that Jewish prisoners are able to observe all feast days." The plaintiff also has attached various memos discussing various Feasts, their significance, and a listing of inmates who will participate.

### CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Haefling v. United Parcel Service, Inc., 169 F.3d 494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16 F.3d 832, 836 (7th Cir. 1994). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999). A fact is material if it is outcome determinative under applicable law. Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999);

Smith v. Severn, 29 F.3d 419, 427 (7th Cir. 1997); Estate of Stevens v. City of Green Bay, 105 F.3d 1169, 1173 (7th Cir. 1997). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. Plair v. E.J. Brach & Sons, Incorporated, 105 F.3d 343, 346 (7th Cir. 1997); Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994); Dempsey, 16 F.3d at 836. Finally, summary judgment "will not be defeated simply because motive or intent are involved." Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994). See also, Miller, 168 F.3d at 312; Plair, 105 F.3d at 347; Hong v. Children's Memorial Hospital, 993 F.2d 1257, 1261 (7th Cir. 1993); Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

See also, Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986); Haefling, 169 F.3d at 497-98; Sybron Transition Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997); Weinberger v. State of Wisconsin, 105 F.3d 1182, 1188 (7th Cir.

1997).

As noted above, the plaintiff's claim is that he was treated differently by the defendant, because of his religion, when he was deprived the ability to participate the Feast of the Unleavened Bread in 2001, 2002, and 2003. In order to prevail on a claim pursuant to 42 U.S.C. §1983, the plaintiff must show that he was deprived of a constitutional right by the defendant and that the defendant acted under color of state law. Brown v. Budz, 398 F.3d 904, 908 (7th Cir. 2005). In this case, the plaintiff claims that he was deprived the equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution which protects individuals from intentional and arbitrary discrimination. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). The Seventh Circuit has stated that:

> Within [] [the] constraints [of a prison environment], the prison must afford all inmates a reasonable opportunity to practice their religion. In providing this opportunity, the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable.
>
> Al-Alamin v. Gramley, 926 F.2d 680, 686 (7th Cir. 1991) (citations omitted).

An equal protection claim, in turn, requires a showing that the plaintiff "is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." Brown, 398 F.3d at 916 (citation and quotations marks omitted). The plaintiff's claim is analyzed under a strict scrutiny

standard as he is alleging that the defendant burdened a fundamental right, his free exercise of religion.  See Zehner v. Trigg, 133 F.3d 459, 463 (7th Cir. 1997).  However, it is not enough for the plaintiff to show disparate impact; rather, he must show that the defendant acted with discriminatory intent.  Franklin v. City of Evanston, 384 F.3d 838, 846 (7th Cir. 2004); Schroeder v. Hamilton School District, 282 F.3d 946, 951 (7th Cir. 2002) (quoting Nabozny v. Podlesny, 92 F.3d 446, 453 (7th Cir. 1996): "A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation" and "[a] showing that the defendants were negligent will not suffice").

In order for the plaintiff to prevail on his claim, then, he must show that similarly situated inmates were treated differently than him and that the different treatment was based on his religion.  In this case, there has been no showing that the defendant acted with discriminatory intent.  Rather, the decision to not allow the plaintiff to participate in the Feast was based on his failure to properly fill out a request – a non-discriminatory reason.  As noted above, the plaintiff's 2001 and 2003 requests were insufficient and did not comply with the regulations.  With respect to the 2002 request, the parties dispute as to whether the request was made too late.  However, this dispute does not preclude summary judgment.  At most, this disputed fact shows that the defendant may have been confused as to the start date of the Feast – no jury would find that this disputed fact leads to the conclusion that the defendant intentionally discriminated against the plaintiff.  See Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir. 1982) (stating that there must be a showing of purposeful and intentional discrimination.).[3]

---

[3] The Shango Court further quoted Brisco v. Kusper, 435 F.2d 1046, 1952 (7th Cir. 1970): The "Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers.

The plaintiff has not shown that any other person, who failed to properly fill out a request, was granted a dietary modification during a recognized holy day or period.  That is, the plaintiff has pointed to no similarly situated person, who improperly filled out or submitted a request for a special meal for religious reasons, was given that meal.  Rather, the plaintiff only has shown that one or two individuals were denied a meal, like him, for failing to fill out the proper paperwork, or that others were given a meal for not filling out the paperwork at all (based on the recommendation of their faith representative).  There is simply no showing that the policies of the jail were not imposed even-handedly.   As the plaintiff has not shown any discriminatory intent, there can be no equal protection violation.

### CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Motion for Summary Judgment filed by the defendant, Stephen Keim, on October 18, 2005 be **GRANTED** (Doc. 13), that judgment be entered in favor the defendant and against the plaintiff, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  <u>Snyder v. Nolen</u>, 380 F.3d 279, 284 (7th Cir. 2004); <u>United States v. Hernandez-Rivas</u>, 348 F.3d 595, 598 (7th Cir. 2003).

---

The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action."

**DATED: September 12, 2006**

                                          <u>s/ *Donald G. Wilkerson*</u>
                                          **DONALD G. WILKERSON**
                                          **United States Magistrate Judge**