# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DERRICK JORDAN, | ) | |
| Plaintiff, | ) | |
| v. | ) | 04-CV-775-DRH |
| CHAPLAIN STEVE KEIM, | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**HERNDON, Chief Judge:**

Plaintiff, Derrick Jordan, is an inmate at the Menard Correctional Center, and is a Hebrew Israelite. The plaintiff has alleged that during 2001, 2002, and 2003 the defendant, Steve Keim, a Chaplin at Menard, prevented him from participating in a religious ritual of his faith, the Feast of the Unleavened Bread, and that the defendant has a discriminatory animus against people of the Hebrew Israelite faith, in violation of plaintiff's First Amendment rights. The Court previously entered partial summary judgment against plaintiff on his claims of Fourteenth Amendment Equal Protection violations as they related to the Feasts in the years 2001 and 2003, finding that the plaintiff had failed to establish a constitutional violation for either of those years. (See, Doc. 32).

The Court held a bench trial on the only remaining claim (relating to the 2002 Feast) and took the matter under advisement. Plaintiff's claim with respect to the year 2002 is that he did not receive equal treatment with respect to his request to participate in the Feast of Unleavened Bread in violation of his Fourteenth Amendment rights. The Court now makes the following

1

findings of fact and conclusions of law.

## A. FINDINGS OF FACT

The following facts are undisputed by the Parties and the Court adopts them:

1. Plaintiff was, at all times relevant to this claim, an inmate in the custody of IDOC at Menard Correctional Center.

2. At all relevant times, Defendant Keim was employed by the Illinois Department of Corrections as a chaplain and was acting under color of state law.

3. In January of 2001, plaintiff changed his designation/affiliation within the Institution from Christian to African-Hebrew Israelite.

4. The African-Hebrew Israelite religion was not a recognized religion within the IDOC system until October 3, 2003.

5. The Illinois Administrative Code requires that if a committed person requests a dietary modification for a specific religious holiday, he must submit a written request to the facility chaplain 45 calendar days before the holiday or ceremony. The request must contain verification that the person is a member of the faith group. The facility chaplain may determine eligibility to receive the alternate diet for the religious holiday or ceremony. The facility chaplain shall "ordinarily" confer with a religious leader or faith representative of the faith at issue and the chaplain and religious leader may interview the committed person. 20 Ill. Admin. Code § 425.70(d).

6. On February 11, 2002, the plaintiff submitted a written request for dietary modification for the Feast of Unleavened Bread.

7. Plaintiff's 2002 request was denied by defendant Keim.

8. Keim advised plaintiff that his request was denied because it was not submitted 45 days before the start of the Feast of Unleavened Bread.

9. In October of 2003, Hebrew Israelite was added by the DOC to its list of recognized religious affiliations/designations and in 2004 and 2005 plaintiff was allowed to receive a dietary modification for the Feast of Unleavened Bread.

The Court makes the following findings with respect to the disputed matters:

10. Rabbi Binyomin Scheiman, who is a Rabbi of the Jewish faith, is a contractual chaplain for State of Illinois. As part of his duties, he provides, to the Institution Chaplin, a list or request of various inmates at Menard who have requested, and are eligible to observe Feast of Unleavened Bread. Members submit a request to chaplain Keim and Rabbi Scheiman provides a list of regular inmates that he sees as part of the ministry of the Jewish faith.

11. Rabbi Scheiman reminds those inmates who practice one of the faiths he oversees to get their requests for feast celebrations to Keim in a timely manner. He testified that those who get it in on time usually participate.

12. Rabbi Scheiman is familiar with Heberw-Israelite religion in that he has heard of it and visits its members but does not know a lot about the tenants of that religion.

13. The Jewish calendar establishes when Passover begins. It is based upon a lunar calendar so there are not corresponding dates to American solar calendar. Under the Jewish faith, the first day of Feast begins first day of Passover which would be the evening before the first day (at sundown).

14. Rabbi Scheiman testified that, according to the Jewish Calendar, for the year 2002, Passover would start on nightfall on March 27, 2002. That means, that the Jewish seder

actually started the evening of March 27th although the first day of holiday is March 28th, the feast begins at sundown the night before.

15. Defendant Steven Keim testified he is the Sr. Chaplain at Menard and is an employee of the State of Illinois. His general duties include insuring that the offender population has reasonable opportunity to observe their faith. He also oversees religious dietary programs; changing of religions; answers religious grievances; and, the mailing and securing of donations.

16. With respect to dietary modifications the defendant Keim stated that he does not specifically remember or recall plaintiff, nor does he recall denying plaintiff's request for 2002.

17. Keim testified that he followed Jewish calendar, as identified by Rabbi Scheiman, to determine Feast days for African Hebrew-Israelites. With respect to 2002, Keim testified that he approved the approved or denied requests for dietary modifications in accordance with Departmental Rule 425 (DR-425). Section 425.70(d) provides: "committed person requesting – must submit request 45 days."

18. The protocol for requests is that the offender has to first timely submit the request for a special holiday observance. The plaintiff's religion fell under the "Jewish umbrella," which includes the religions: House of Yahwe, B'Nai-Noah, Hebrew-Israelite, and African Hebrew-Israelite. At the time in question, the process was not computerized, so Keim kept a running list of requests on tablet and any requests that came in after the date on the calendar were noted and then denied. In this case he would have used the date given to him by Scheiman to determine the cut-off date and, based on that date denied any requests that came in "late."

19. It was established that inmates may submit requests early to Keim, which will be honored and all requests were complied in a folder. (Today they would make a database list but,

in 2002, he would compile written lists).

20. Keim receives his information concerning the date of requests from the Rabbi, and prints out an interfaith calendar for 75 holidays in the institution. He follows that calendar to determine the timeliness of requests. Keim believed that the plaintiff did not, in 2002, submit his request to participate in the feast in a timely manner, in accordance with the dates given to him by the Rabbi.

21. Specifically, plaintiff's request, according to the dates supplied by the Rabbi that year to Keim, was submitted one day late.

22. Plaintiff testified that as of 2001, he became a practicing Hebrew Israelite, and remains one to this date. Plaintiff attempted to establish a pattern of willful denials of request dates for religious observances by Keim, by asserting that in 2001 his submitted request was improperly denied as untimely. However, the Court notes that a prior ruling of this Court determined that the 2001 request was appropriately denied because it did not comply with departmental rules. (*See*, Order at Doc. 32). He also asserted that his 2003 requests were denied, but, again, the Court has previously determined that the 2003 request did not comply with institutional regulations in that plaintiff's request failed to identify a faith group, a verification and the specific dietary modification required. (*Id.*) Plaintiff filed this action in 2004 and noted that since that time, he has been able to participate in the Feast of Unleavened Bread.

Plaintiff did establish that in the Hebrew Israelite religion the Passover celebration has slightly different commencement dates than does the Feast of Unleavened Bread, and those religious holidays are, at least within the practices of plaintiff's religion, two separate events. The Court, through its own independent review, has confirmed that Leviticus 23, vs 4-14,

provides that the Feast of Unleavened Bread begins day after Passover. The Feast of Unleavened Bread is based upon the Israelites leaving in haste, so the Feast, which lasts 7 days would actually have started one day *after* the first night of Passover.

23. Plaintiff testified that he feels that he was treated unequally or unfairly as opposed to other religious faiths. He testified that he, and members of his religion have been required to submit requests but Muslims do not have to meet strict requirements, and that, in his observations members of the Jewish faith did not have to submit requests at all.

24. In support of his claim of unfair treatment, plaintiff offered the testimony of several inmate witnesses, including Abdul Mohammud, currently an African Hebrew-Israelite inmate who has been at Menard Correctional Center since January 2002. In 2002 he was designated and considered himself Islamic, and that while Islamic the institution would do a community meal for Islam belivers and that he did not have to put in a dietary request.

Plaintiff also offered the testimony of Courtney Hubbard, who has been at Menard Correctional Center since May of 2001 and is currently a member of B'Nai-Noah faith which observes the Feast of Unleavened Bread. He testified that a few years ago the feast was automatic, but now he is required to submit a request.

Hubbard testified that if your name was on a list when you showed up at the food hall and you were on the Feast list you could get your specialty tray. He also stated that he did not know how his name got on the list, and that 2006 everything changed and now have to submit request for tray and unleavened bread.

Finally, plaintiff offered the testimony of Joel Buie who has been an inmate at Menard Correctional Center since 1988 and was formerly a practicing Hebrew Israelite. His ID card

currently identifies him as "Jewish," but he testified that he does not practice currently. Although he has received dietary modification in the past he had not put in request since 2001.

25. The Court finds, on balance, that the testimony of Rabbi Scheiman and defendant Keim as to the regularity of the practices for religious feast observances at Menard Correctional Center during the time in question, i.e. that there was, in place, a formal request process and any and all members of a faith who wished to celebrate with special dietary considerations had to submit a timely written request, is more credible that the testimony of the plaintiff or his inmate witnesses that there were no formal request requirements until after the time plaintiff filed this action.

26. The Court finds that although Keim is designated Sr. Chaplain it would be unreasonable to require him to understand and interpret all religions and their holidays. His duty is to help inmates observe their faiths while within the Department of Corrections custody.

### B. CONCLUSIONS OF LAW

To succeed on a an equal protection violation claim, plaintiff must show that he was deprived of a constitutional right by the defendant and that the defendant acted under color of law. The Seventh Circuit has held that a prison "must afford all inmates a reasonable opportunity to practice their religion." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991).

The Free Exercise Clause is violated when the plaintiff establishes: that the defendant's action substantially burdens the "exercise" of religion, i.e., an act or practice mandated by or central to a particular religion but, When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 79 (1987).

Courts consider four factors in determining the reasonableness of the regulation at issue: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it,"*Turner v. Safley,* 482 U.S. 78, 89 (1987)(*citation omitted*); (2) "whether there are alternative means of exercising the rights that remain open to prison inmates," *id.* at 90; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," *id.*; and, finally, (4) the absence of ready alternatives, *id*. If the regulation strikes a reasonable balance between the interest in religious liberty and the needs of prison safety and security, the prisoner must lose his free-exercise claim. *Russell v. J. D. Richards*, 384 F.3d 444, 447 (2004) ; *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988).

Clearly, the regulations of the IDOC with respect to the 45 day request period meet this four-part test, and thereby the regulation itself does not violate the Free Exercise clause. The 45 day request period is reasonable in length, and there is a "valid, rational" reason for the regulation. Special dietary requests in a prison facility require more than limited notice. Moreover, plaintiff is not really challenging the regulation itself, but whether the defendant properly denied the request. The Court **FINDS** that plaintiff's claims of pattern and practice are no longer available because the denial of the 2001 and 2003 requests were based on legitimate reasons, as set forth in the Court's prior Order. The Court **FURTHER FINDS** that reasonable alternatives to the 45 day request period do not exist and plaintiff has not shown the availability of reasonable alternatives to this requirement.

Plaintiff's main argument is that the defendant Keim discriminated against him and his religious affiliation by denying his timely request to participate in the Feast in 2002. Clearly,

prisons cannot discriminate against a particular religion. *Al-Alamin v. Gramley,* 926 F.2d 680, 68 (7th Cir. 1991). And, although a religious based claim is subject to strict scrutiny, plaintiff must, nonetheless, show that the defendant acted with discriminatory intent. In order to establish an equal protection violation, a plaintiff must "demonstrate intentional or purposeful discrimination" against him because of his "membership in a definable class." *Nabozny v. Podlesny,* 92 F.3d 446, 453-54 (7th Cir.1996). The Court **FINDS** there is no credible evidence that defendant Keim intentionally discriminated against plaintiff with respect to his 2002 request to participate in the Feast of Unleavened Bread. Keim relied upon the date for the beginning of the Feast as given to him by Rabbi Binyomin Scheiman, and, from that date, calculated the cut-off date for requests. Plaintiff's request was denied because, according to all reasonable information available to defendant Keim, plaintiff's request was one day late based upon the Jewish calendar. Even if the calculation of the cut-off date was technically in error, the determination to preclude the plaintiff from participating in the 2002 feast was not done by Keim with any discriminatory intent therefore, plaintiff's claims with respect to the 2002 incident must fail.

Accordingly, the Court **FINDS** that plaintiff has failed to establish his claim that defendant Steven Keim violated his First Amendment rights because plaintiff has not proven that the defendant had a discriminatory animus against people of the Hebrew Israelite faith when he denied plaintiff's 2002 request to participate in the a religious ritual of his faith, the Feast of the Unleavened Bread. The denial was, at most, negligent, and that does not rise to the level of discriminatory intent required to sustain this claim.

Therefore, the Court **FINDS** in favor of defendant **STEVE KEIM** and against plaintiff

9

**DERRICK JORDAN** on his 2002 claim.

The Clerk of the Court is directed to enter judgment accordingly. Each party shall bear its own costs.

**IT IS SO ORDERED.**

**DATE: August 7, 2009.**

/s/     DavidRHerndon
**CHIEF JUDGE**